ROBERT P. HACKETT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ARTHUR O. WELLMAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

JOHN H. NICHOLS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 5614, 5615, 5616. Promulgated December 28, 1945.

*Edward C. Park, Esq.*, for the petitioners.
*Carl A. Stutsman, Jr., Esq.*, for the respondent.

OPINION.

BLACK, *Judge*: These proceedings, which were duly consolidated, involve deficiencies in income tax for the calendar year 1941 in the amounts of $16,499.98, $52,869.48, and $31,104.47, respectively.

The deficiencies are due to the respondent's determination that petitioners received income in 1941 in excess of that disclosed by their returns in the respective amounts of $25,000, $75,000, and $45,000. These amounts represented the cost of certain nonforfeitable annuity

contracts purchased for petitioners and delivered to them in 1941 by Nichols & Co. as additional compensation. In a statement attached to Hackett's deficiency notice the respondent explained the $25,000 adjustment in Hackett's net income as follows:

During the year 1941 you received, over and above your regular compensation from Nichols & Company, Inc., 140 Federal Street, Boston, Massachusetts, a single premium paid up annuity contract purchased for you at a cost of $25,000.00. This annuity contract is evidenced by the following policy:

Policy #071494—John Hancock Mutual Life Insurance Company Install- ment Refund Annuity—$25,000.00 on the life of Robert P. Hackett.

You did not include the amount of $25,000.00 representing the cost of the annuity in your return for the year 1941.

In accordance with the provisions of section 22 (a) of the Internal Revenue Code, your gross income has been increased by the amount of $25,000.00 to reflect the receipt of such income.

Similar explanations of adjustments of $75,000 and $45,000, respectively, were made to Wellman and Nichols in the deficiency notices sent to them.

Petitioners, by appropriate assignments of error, contest these adjustments in their net income. The facts were all stipulated and are so found. Only those facts material to an understanding of the issues will be stated.

Petitioners are individuals and residents of Massachusetts. They filed their returns with the collector for the district of Massachusetts.

Nichols Co. is a Massachusetts corporation, engaged in manufacturing and selling wool tops, with its principal place of business in Boston. Its directors in 1941 were the petitioners and John H. Nichols, Jr. Wellman was president; Nichols was treasurer; Hackett was vice president; and Nichols, Jr., was assistant treasurer.

On or about December 20, 1939, the corporation bought and delivered to nine employees other than the officers single premium annuity contracts similar in form to those involved in these cases as part of the compensation of such employees. On or about December 20, 1940, the corporation bought and delivered to the same nine employees and three others, all other than the officers, similar annuity contracts as part of the compensation of such employees. These employees made income tax returns, but none of them included the value of the annuity contracts in their returns, although the corporation in each year deducted the premiums as an expense. On or about July 1, 1941, the corporation similarly bought and delivered annuity contracts for forty-five employees other than the officers, and on or about December 20, 1941, for forty-three employees other than the officers.

On August 19, 1941, the directors of the corporation met in a special meeting, at which the following proceedings, as shown by the minutes, took place:

A special meeting of the Board of Directors of Nichols & Company, Inc. was held at the office of the corporation, 140 Federal Street, Boston, Massachusetts, on Tuesday, August 19, 1941. All the Directors were present, being Messrs. Arthur O. Wellman, Robert P. Hackett, John H. Nichols, and John H. Nichols, Jr. Robert M. Kellaway, Secretary, kept the records of the meeting.

The meeting was called to order by the President, Mr. Wellman, at 11:00 A. M.

The following Annuity contracts were presented to the Board by Paul M. Goddard:

Policy #AN–22231 Aetna Life Insurance Company Installment Refund Annuity—$50,000 on the life of Arthur O. Wellman

Policy #AN–22232 Aetna Life Insurance Company Installment Refund Annuity—$20,000 on the life of John H. Nichols.

Policy #071494 John Hancock Mutual Life Insurance Company Installment Refund Annuity—$25,000 on the life of Robert P. Hackett

Policy #071495 John Hancock Mutual Life Insurance Company Installment Refund Annuity—$25,000 on the life of John H. Nichols

Policy #071496 John Hancock Mutual Life Insurance Company Installment Refund Annuity—$15,000 on the life of John H. Nichols, Jr.

Policy #071497 John Hancock Mutual Life Insurance Company Installment Refund Annuity—$25,000 on the life of Arthur O. Wellman.

On motion duly made and seconded, it was unanimously VOTED:

That the Corporation should purchase these Annuities of the respective Companies at the above purchase prices, respectively, to provide income for life, as follows:

Mr. Arthur O. Wellman_____ $3,370.00 annually
Mr. John H. Nichols_____ 2,529.90 annually
Mr. John H. Nichols, Jr_____ 540.75 annually
Mr. Robert P. Hackett_____ 1,069.50 annually

That the Corporation purchase these Annuities as further compensation for valuable services rendered, in the belief that the Corporation would benefit by increased loyalty and efficiency by reason of these incomes during the future years, but without the respective annuitants having any right to receive the purchase price or to cash or surrender such Annuities.

That the annuitants will have the right from time to time to change the beneficiaries who are to receive any balance of installments in case of death. This Corporation shall have no incidents of ownership whatsoever in these contracts.

That, to carry out the intent and purposes of this action, none of the annuitants have any right to assign, alienate, or commute the contracts or any payment thereunder, and that the contracts and all payments thereunder shall not be subject to the debts, contracts or engagements of the respective annuitants, nor to any legal or equitable process whatsoever, and that the insurance companies be requested to include provisions in the contracts providing the same in substance. The corporation voted to ratify all negotiations entered into by Mr. Arthur O. Wellman, President, on behalf of the Corporation.

At the time of said meeting and at the time when annuities for other employees of the corporation were purchased, the officers and the other employees were advised and believed that the value of the policies need not be returned as income in the year in which purchased, but that the full amounts paid as annuities thereon should be so returned in each

year received. The petitioners made their returns upon a cash basis.

The corporation, pursuant to the vote of August 19, 1941, purchased the annuity contracts referred to in the minutes of the meeting and paid the premiums listed in the aforesaid minutes in August 1941. The annuity contracts were delivered to and received by each respective annuitant during 1941. Copies of the annuity contracts are annexed to the petitions and are incorporated herein by reference.

Section 4193 of the General Statutes of Connecticut, referred to in the annuity contracts issued by Aetna Life Insurance Co., provides as follows:

> Any domestic life insurance company shall have power to hold proceeds of any policy issued by it under a trust or other contract upon such terms and restrictions as to revocation by the policy holder and control by beneficiaries and with such exemptions from the claims of creditors of beneficiaries other than the policy holders as shall have been agreed to in writing by such company and the policy holder.
>
> Such insurance company shall not be required to segregate funds so held but may hold them as part of its general assets. Similar terms, restrictions and exemptions for the benefit of any payee other than the purchaser may be included by any such company in any annuity contract or any agreement issued in connection therewith or supplemental thereto.

The directors had voted the officers of the corporation compensation for the year 1941 at annual rates on March 18, 1941, and the officers were paid such compensation in that year. The annuity contracts voted on August 19, 1941, were for additional compensation to which none of the officers were entitled except under said vote. The corporation in its income tax return for the year 1941 deducted the salaries paid to officers and the cost of the annuity contracts purchased for them as an expense. The respondent has not agreed that the total compensation of the officers for the year 1941 was reasonable in amount, and through the internal revenue agent in charge at Boston has proposed a disallowance of deductions by the corporation for compensation of the officers in excess of those established as the annual rates on March 18, 1941, claiming that any amounts in excess thereof would be unreasonable.

There was no vote of the directors in 1941 other than that of August 19 to pay the officers additional compensation, and no proposal was made at any directors' meeting or otherwise to pay compensation in cash in addition to that voted on March 18, 1941. The directors in passing the vote of August 19, 1941, were influenced by the fact that they had granted additional compensation to other employees in the form of annuity contracts and by the fact that they believed that compensation in that form would not be included in their income for the year 1941. No bonuses or other compensation in addition to that established as annual compensation was voted or paid to any one of the petitioners in the years 1937, 1938, 1939, and 1940.

The directors in August 1941 owned personally 836 common shares of the corporation out of 3,000 shares outstanding. The remaining shares were held by 29 shareholders, of whom all except one, holding one share, were wives, children, or other relatives of one or the other of the officers or trustees for present or future and as yet unascertained members of the family of one or the other of the officers. The common shares had the exclusive voting rights. There were in August 1941 2,000 shares of preferred stock outstanding, 1,000 of which were owned by the wife of Nichols, 650 by Wellman as trustee for his mother and his three children, and 350 by his three children.

Each of the petitioners received in 1942, 1943, and 1944 amounts as annuities under the annuity contracts for which the corporation paid in 1941 and returned the full amounts so received as income in his return of income for each such year. The period within which claims for refund for said years 1942, 1943, and 1944 may be filed is still open.

Policy No. AN–22231, which was delivered to Wellman, may be considered as typical of all. It was issued by Aetna Life Insurance Co. in consideration of a single premium of $50,000. It provided for the payment to Wellman of $2,247 on August 15, 1942, and a like amount on the same day of each succeeding August during the life of the annuitant. It further provided that if the total amount of the annuity payments at the death of the annuitant should not equal the premium, the company would make annuity payments of a like amount on the same day of the year to beneficiaries designated by the annuitant, until the total amount of all such payments should equal the premium. The contract also provided that the annuitant could change the beneficiaries entitled to payments after his death, and that:

In accordance with Section 4193 of the General Statutes of Connecticut, it is agreed between the Company and the purchaser of this contract, Nichols and Company, Inc., Boston, Massachusetts, that neither the annuitant nor any beneficiary hereunder shall have the right to assign, anticipate, alienate or commute the payments becoming due, or his or her right, title or interest therein, except as specifically provided in this contract; that all payments hereunder shall be free from the claims of creditors both of the annuitant and any beneficiary or beneficiaries, and from all legal process to levy upon or attach the same; that this agreement shall be subject to, governed by and construed in accordance with the Laws of the State of Connecticut, and that all payments hereunder shall be made at the Home Office of the Company in Hartford, Connecticut, where this agreement is made and is to be performed.

The application annexed to the contract was signed by Nichols & Co. and by Wellman as annuitant, and it disclosed that Wellman was born on October 31, 1894.

The respondent contends (1) that the doctrine of constructive receipt should be applied as it was in *Richard R. Deupree*, 1 T. C. 113, and (2) that in any event the fair market value of the annuity con-

tracts (which he says is what Nichols & Co. paid for them) should be included in petitioners' gross income under section 22 (a) of the Internal Revenue Code,[1] and section 19.22 (a)–3 of Regulations 103,[2] citing in support thereof *Renton K. Brodie,* 1 T. C. 275, and *Oberwinder* v. *Commissioner,* 147 Fed. (2d) 255. In this connection see also *Miller* v. *Commissioner,* 144 Fed. (2d) 287; *William E. Freeman,* 4 T. C. 582 (on appeal to C. C. A., 2d Cir.); and *Hubbell* v. *Commissioner,* 150 Fed. (2d) 516, affirming 3 T. C. 626.

Petitioners state their position as follows:

The petitioners deny that they constructively received the cash paid by the corporation for the annuity contracts. They say that they were never entitled to such cash and never received it, constructively or otherwise.

They admit that they received the annuity contracts and that such contracts constituted gross income within the meaning of I. R. C., Section 22 (a) as decided by this Court in *Renton K. Brodie, supra, D. D. Hubbell,* 3 T. C. 626, *William E. Freeman,* 4 T. C. No. 70, *J. Ferd Oberwinder,* T. C. Memo, April 26, 1944, affirmed *Oberwinder* v. *Commissioner,* 147 F. 2nd 255 (C. C. A.-8) *W. A. Shannon,* T. C. Memo, March 30, 1945.

It is not intended to reargue that issue in this Court.

The issue made by the petitioners is that the value of the annuity contracts is excluded from gross income by the provisions of Section 22 (b) (2). The argument on that issue must necessarily concede that the contracts are included within the meaning of Section 22 (a).

It is important to notice that this issue has not been decided by any of the cases which have held that the value of such contracts in a case such as this should be included in gross income.

We agree with petitioners to the extent that they did not constructively receive the cash that was used by Nichols & Co. to purchase the annuity contracts. Our reasons for that are the same as were stated in *Renton K. Brodie, supra,* wherein we distinguished that case from the *Richard R. Deupree* case. We agree with petitioners that *Richard R. Deupree, supra,* is not an applicable authority in this case. But aside from the constructive receipt feature, we are unable to agree with petitioners' other contentions in the light of the decided cases. It was stipulated that petitioners "received" the annuity contracts during the taxable year 1941, and that Nichols & Co. had purchased these contracts for petitioners "as further compensation for valuable services rendered." Without more it would seem that these facts bring petitioners squarely within the provisions of the code and the regulations relied upon by the respondent and set forth in footnotes 1 and 2, *supra,*

---

[1] SEC. 22. GROSS INCOME.

(a) GENERAL DEFINITION.—"Gross income" includes gains, profits, and income derived from salaries, wages, or compensation for personal services" * * * of whatever kind and in whatever form paid * * *.

[2] SEC. 19.22 (a)–3. *Compensation paid other than in cash.*—If services are paid for with something other than money, the fair market value of the thing taken in payment is the amount to be included as income. * * *

and also within the decided cases of *Renton K. Brodie* and *Oberwinder* v. *Commissioner*, both *supra*. Nevertheless, petitioners contend as stated in their position above, that "the value of the annuity contracts is excluded from gross income by the provisions of Section 22 (b) (2)." The provisions of this section of the code relied upon by petitioners are set forth in the margin.[3]

Petitioners did not receive any amounts as an annuity under any annuity contract during the taxable year 1941. It would seem, therefore, that section 22 (b) (2) of the code would have no application in determining petitioners' tax liability for the year 1941. That which petitioners received in 1941 was the paid-up annuity contracts themselves and these contracts were received as further compensation for services rendered.

For the sake of completeness, however, we will follow petitioners' argument to its conclusion. Petitioners in effect say that, before we decide whether the value of the contracts should be included in gross income for 1941 under section 22 (a), we should look into the future years and see what will happen under section 22 (b) (2) when petitioners begin to receive the annuities under the contracts. In this connection they argue that under 22 (b) (2) they are required to "include" in gross income for such later years and have done so, the full amounts received in those years as annuities, on the ground that the exception stated in 22 (b) (2) would not apply to them for the reason that, as petitioners contend, the words "aggregate premiums or consideration paid for such annuity" mean *paid by the annuitant* and not by someone else. Petitioners then argue that if the entire amounts received as annuities in the years subsequent to the year 1941 are to be included in gross income under 22 (b) (2), then no amount ought to be included in gross income in 1941 under 22 (a) as representing the value of the contracts, as that would be double taxation.

Petitioners, in support of their contention that the words "aggregate premiums or consideration paid for such annuity" mean paid by the annuitant, cite *Charles L. Jones*, 2 T. C. 924. Jones in 1934 received an annuity contract from his employer and did not return any part of its value in his gross income for that year. This action was in accord

---

[3] SEC. 22. GROSS INCOME.

\* \* \* \* \* \* \*

(b) EXCLUSIONS FROM GROSS INCOME.—The following items shall not be included in gross income and shall be exempt from taxation under this chapter:

\* \* \* \* \* \* \*

(2) ANNUITIES, ETC.—\* \* \* Amounts received as an annuity under an annuity or endowment contract shall be included in gross income; except that there shall be excluded from gross income the excess of the amount received in the taxable year over an amount equal to 3 per centum of the aggregate premiums or consideration paid for such annuity (whether or not paid during such year), until the aggregate amount excluded from gross income under this chapter or prior income tax laws in respect of such annuity equals the aggregate premiums or consideration paid for such annuity. \* \* \*

with the Commissioner's later construction of the Revenue Act of 1934, which construction he published as an office decision early in 1935 as I. T. 2891, Cumulative Bulletin XIV–1, p. 50, set out in the margin.[4] In the taxable years 1939 and 1940, Jones received the annuities under the annuity contract and one of the questions before this Court was to determine the extent to which these annuity payments were includible in gross income under section 22 (b) (2). The answer to this question depended upon the construction of the words "aggregate premiums or consideration paid for such annuity." Our conclusion (p. 934) was that "Congress intended to limit the deduction under section 22 (b) (2), *supra*, to the aggregate premiums or consideration paid by the annuitant except where, as in the *Deupree* and *Brodie* cases, *supra*, the annuitant has been in receipt of taxable income in the year in which the annuity was purchased for him by his employer."

Under that limited holding we do not see wherein the *Jones* case is of much help to petitioners. The Commissioner did not continue to construe the law as announced in his I. T. 2891, *supra*. Otherwise, the *Brodie* case would never have arisen. Furthermore, we specifically held in *William E. Freeman, supra*, that the cost ($71,339.20) of the annuity contracts there involved which had been purchased to compensate Freeman was income to him in 1939 when the contracts were received, and that "Payments under the annuity contracts may be reported properly under section 22 (b) (2), and for that purpose $71,339.20 will represent their cost." In other words, in the *Freeman* case we construed the words "aggregate premiums or consideration paid for such annuity" to include payments by others on behalf of the annuitant in the form of compensation as well as by the annuitant himself. In *Hubbell* v. *Commissioner, supra*, the court in affirming our decision, among other things, said:

\* \* \* In the circumstances, the payment by the company of the premiums on the annuity contracts was, as found by the tax court, the equivalent of the payment of the same amount in cash to petitioners. The payments are, therefore, properly taxable to petitioners during the taxable year in which the payments were made.

Petitioners have called our attention to section 162 (c) and (d) of

---

[4] Advice is requested relative to the treatment under the Revenue Act of 1934 of amounts paid by an employer toward the purchase of retirement annuity contracts for the benefit of his employees.

It is held that contributions made by an employer for the purpose stated do not constitute income constructively received by the employees. Such amounts are not, therefore, required to be included in the Federal income tax returns of the employees for the year or years in which paid. The aggregate of the amounts contributed by the employee beneficiary toward the purchase of a retirement annuity, but not the amount contributed by the employer, constitutes "the aggregate premiums or consideration paid for such annuity" within the meaning of section 22 (b) of the Revenue Act of 1934. Amounts received by employees in the form of annuities are to be returned for Federal income tax purposes in the manner and to the extent provided in that section.

the Revenue Act of 1942 [5] and have suggested that this legislation represented a change in the law. See also section 120 (d) of the Revenue Act of 1942, wherein Congress also amended section 22 (b) (2) "by striking out the heading and inserting in lieu thereof '(2) Annuities, etc.—(A) In General.—'." Petitioners say that the second sentence of new subparagraph (B) "would have been wholly unnecessary if the existing law already required amounts contributed by an employer toward the purchase of an annuity contract by his employee to be included in the employee's gross income." This Court was aware of the new subparagraph (B) at the time we decided the *Brodie* case. See page 285 of our opinion in that case. Nevertheless, we interpreted the existing law as meaning the same as is provided by the second sentence of new subparagraph (B), and we have been affirmed in other cases which followed the *Brodie* decision. See *Miller* v. *Commissioner; J. Ferd Oberwinder* v. *Commissioner;* and *Hubbell* v. *Commissioner*, all *supra*.

We, therefore, sustain the respondent's determinations.

*Decisions will be entered for the respondent.*

---

[5] (c) EMPLOYEES' ANNUITIES.—Section 22 (b) (2) (relating to taxation of annuities) is amended by inserting at the end thereof the following new subparagraph:

"(B) Employees' Annuities.—If an annuity contract is purchased by an employer for an employee under a plan with respect to which the employer's contribution is deductible under section 23 (p) (1) (B), or if an annuity contract is purchased for an employee by an employer exempt under section 101 (6), the employee shall include in his income the amounts received under such contract for the year received except that if the employee paid any of the consideration for the annuity, the annuity shall be included in his income as provided in subparagraph (A) of this paragraph, the consideration for such annuity being considered the amount contributed by the employee. In all other cases, if the employee's rights under the contract are nonforfeitable except for failure to pay future premiums, the amount contributed by the employer for such annuity contract on or after such rights become nonforfeitable shall be included in the income of the employee in the year in which the amount is contributed, which amount together with any amounts contributed by the employee shall constitute the consideration paid for the annuity contract in determining the amount of the annuity required to be included in the income of the employee under subparagraph (A) of this paragraph."

(d) TAXABLE YEARS TO WHICH AMENDMENTS APPLICABLE.—The amendments made by this section shall be applicable as to both the employer and employees only with respect to taxable years of the employer beginning after December 31, 1941, except that * * *,