## PAUL A. DRAPER, PETITIONER, ET AL.,[1] *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 5988–5996.   Promulgated February 13, 1946.

*George R. Blodgett, Esq.*, for the petitioners.
*Carl A. Stutsman, Jr., Esq.*, for the respondent.

### OPINION.

BLACK, *Judge*: These consolidated proceedings involve deficiencies in income tax for the calendar year 1941 in amounts as follows:

| Petitioner | Docket No. | Deficiency |
|---|---|---|
| Paul A. Draper | 5988 | $20,092.16 |
| Kenneth F. Clarke | 5989 | 3,994.59 |
| Genevieve McCausland | 5990 | 218.02 |
| Adrian C. Keller | 5991 | 472.74 |
| George W. Brown | 5992 | 6,735.87 |
| Malcolm Green | 5993 | 12,319.48 |
| Harry H. Hamilton and Clara M. Hamilton | 5994 | 215.98 |
| Alice M. Scott | 5995 | 363.13 |
| Robert W. Dana | 5996 | 12,949.38 |

[1] Proceedings of the following petitioners are consolidated herewith: Kenneth F. Clarke; Genevieve McCausland; Adrian C. Keller; George W. Brown; Malcolm Green; Harry H. Hamilton and Clara M. Hamilton; Alice M. Scott; and Robert W. Dana.

The deficiency in Docket No. 5988 is due to additional income determined by the respondent in the amount of $29,350.81, which he labeled "Salaries and other compensation for personal services" and explained as follows:

It is held that the premium of $29,350.81 paid by your employer, Draper & Co., Inc. on an annuity contract purchased for you, constitutes additional compensation in the taxable year, and is taxable under the provisions of Section 22 (a) of the Internal Revenue Code.

The deficiencies in the remaining proceedings are due to similar adjustments to net income in the amounts of $7,025.76; $1,756.44; $3,220.14; $11,709.60; $17,579; $2,049.18; $2,049.18; and $17,579, respectively.

Petitioners, by appropriate assignments of error, contest these adjustments to their net income.

In Docket No. 5988, the respondent also determined that petitioner Draper had reported excessive dividend income in the net amount of $477.50, and Draper contends that he is, therefore, due a refund of $329.48. Petitioners in Docket Nos. 5989, 5993, and 5996 concede that there will in any event be a small deficiency due to some minor uncontested adjustments.

The facts are stipulated. The stipulation is incorporated herein by reference and adopted as our findings of fact. We set out herein only those facts which we deem necessary to an understanding of the issues.

Petitioners are individuals who reside in the vicinity of Boston, Massachusetts. They filed their returns on the cash basis of accounting with the collector for the district of Massachusetts in Boston. In Docket No. 5994 the wife of the petitioner in interest is joined for the reason that a joint return was filed, but hereinafter only the husband, Harry H. Hamilton, is referred to as the petitioner in that proceeding.

In 1941 petitioners were employees of Draper & Co., of Boston, Massachusetts, hereinafter sometimes referred to as "Draper & Co.," which commenced business on January 1, 1922. Petitioners had been employed by Draper & Co. continuously since 1922.

No part of the amounts paid by Draper & Co. with respect to annuity policies naming petitioners as annuitants, as hereinafter set forth, was included by any petitioner in the income reported on his or her respective return.

Draper & Co. was in 1941, and had been for many years, engaged in the business of buying and selling wool as a principal, and during the fiscal year ended November 30, 1941, it had net sales of $18,728,413.67. On August 12, 1941, it had forty employees, including petitioners. The positions filled by petitioners in 1941 were:

Paul A. Draper, president, treasurer, and director
Kenneth F. Clarke, buyer and salesman

Genevieve McCausland, telephone operator and file clerk

Adrian C. Keller, traffic manager

George W. Brown, assistant treasurer, office manager, and director

Malcolm Green, vice president in charge of grease wool department and director

Harry H. Hamilton, messenger

Alice M. Scott, secretary

Robert W. Dana, vice president in charge of scoured and pulled wool departments and director

In 1941 Draper & Co. adopted a plan for the purchase of retirement annuities for its employees, as set forth in the following excerpts from the minutes of a meeting of its board of directors on August 12, 1941:

The president brought to the attention of the Directors a plan for the purchase of Retirement Annuities by the corporation for the benefit of such of its officers and employees as have been connected with it in either such capacity for at least nineteen years, and to include until further action by the Board of Directors other employees when they have completed nineteen years of service. He pointed out that under the plan it was proposed that the corporation should apply for a retirement annuity for each such officer and employee, each such contract to provide for the payment of annual premiums until such officer or employee reaches the age of sixty-five years, and that the corporation shall pay at the inception of the plan premiums on each contract in an amount not in excess of one year's salary for each annuitant.

After discussions and upon motion duly made and seconded, it was unanimously

VOTED that the corporation adopt a plan providing additional compensation for such of its officers and employees as have been in its service for at least nineteen years, through the purchase of retirement annuities for their benefit each such annuity contract to require an annual premium not in excess of one-third of the salary or other compensations otherwise payable to the annuitant for services to the corporation during the year 1941.

VOTED that the Assistant Treasurer of the corporation George W. Brown, be authorized and directed to negotiate and execute in behalf of the corporation and in its name applications to such insurance company or companies as he may select for such retirement annuity contracts, and to agree with such companies upon the form of the contracts and to accept the same in behalf of the corporation and to pay therefor from the corporate funds the annual premiums for the first year and for two years in advance on each such contract.

VOTED that upon acceptance and delivery of such contracts to the corporation, each such contract should be delivered to the respective annuitant for whose benefit it was made.

VOTED that the corporation shall not obligate itself at this time to pay premiums accruing in future years upon such annuity contracts, leaving the question whether such payments should be made by the corporation or left to the annuitants to make to be determined at such times as premiums become due, it being contemplated, however, that, if the affairs of the corporation permit and services rendered by the annuitants deserve compensation in addition to salaries then paid, such premiums may be paid by the corporation as additional compensation.

At a meeting of the board of directors on October 6, 1941, the question of annuities was dealt with further, as indicated in the following excerpt.

The matter of Annuities originally discussed on August 12th was again brought

to the attention of the Board, and in order to conform to the provisions of the contracts, it was upon motion duly made and seconded,

VOTED the annuitant shall have no rights under the contract on his sole signature except the right to change and successively change the beneficiaries named to receive payment in the event of his decease, or method of settlement to them. Any and all other rights, options or benefits contained in the contract or permitted by the insurance company, including, but without limitation of the foregoing, the right to receive dividends, assign the contract as collateral security, or surrender the same to the company for its cash value, shall be reserved to the Annuitant, but only with the written consent of Draper & Company, Incorporated, its successors and assigns: PROVIDED, HOWEVER, that if said Draper & Company, Incorporated, its successors and assigns shall give its consent to the exercise of any right, any amount which may be payable under the contract during the lifetime of the annuitant by reason of the exercise of such right shall be payable to and for the sole benefit of the annuitant.

The plan was designed to provide reasonable retirement pensions, commencing at age 65, for employees who had been in the service of the corporation for at least 19 years or who might thereafter complete such number of years in service. Petitioners were included as participants in the said plan because they had been in the service of the corporation for the required length of time. No employees other than petitioners had completed 19 years of service by the close of 1941.

Pursuant to the above votes, Draper & Co. made application shortly after August 12, 1941, to the John Hancock Mutual Life Insurance Co., to the Columbian National Life Insurance Co., and to the Union Central Life Insurance Co. for retirement annuity policies for petitioners. Application was made to the latter two companies because the John Hancock Mutual Life Insurance Co. preferred not to accept insurance on any one individual in excess of the amount which could be purchased for an annual premium of $5,000. For this reason, in the case of three of the petitioners, because the annual premiums with respect to each of them totaled more than $5,000, additional coverage was secured from the other two insurance companies. The said applications were signed "Draper & Company, Inc. by Geo. W. Brown, Asst. Treasurer," as applicant, and petitioners signed the respective applications as the annuitants to certify to the truth of the statements contained in the applications.

Pursuant to the applications 28 annuity policies were issued, including 21 issued by the John Hancock Mutual Life Insurance Co., 6 issued by the Columbian National Life Insurance Co., and 1 issued by the Union Central Life Insurance Co. The terms of all of the policies issued by the John Hancock Mutual Life Insurance Co. were identical in every respect except as they varied because of the different ages of the petitioners and the different amounts of annual premium. Similarly, the terms of all of the policies issued by the Columbian National Life Insurance Co. were identical in every re-

spect except as they varied because of the different ages of the petitioners and the different amounts of annual premium. All of the policies, including the one issued by the Union Central Life Insurance Co., provided for the payment of a specified annual monthly annuity, commencing at age 65 if the annual premiums called for by the policies were paid each year until age 65.

In 1941 Draper & Co. paid to the said insurance companies one annual premium on each of the policies, and in addition thereto certain amounts sufficient, when interest was added, to cover the annual premiums on the policies when they became due in 1942 and 1943. These additional amounts would have been repaid by the insurance companies to Draper & Co. if, before such premiums for 1942 and 1943 became due, Draper & Co. had requested such repayment and would have been so repaid if the annuitant had died before the premiums became due, except that in the case of the Columbian National Life Insurance Co. the payment, if the annuitant had died, would have been made to the beneficiaries named in the policies. Draper & Co. did not intend in 1941 to ask for a refund of any of the advance premium payments. The amounts thus paid by Draper & Co. to the insurance companies in 1941 were $31,500 for 1941 premiums and $60,819.11 for 1942 and 1943 premiums.

The cash surrender value of each of the annuity policies at the end of the first contract year was equal to $62 for each $100 of premiums paid. The first contract year in the case of each policy did not end until after December 31, 1941.

The policies issued by the insurance companies named the petitioners as annuitants and they were delivered to Draper & Co., which delivered them in 1941 to the respective annuitant.

The policies issued by the John Hancock Mutual Life Insurance Co., when received by the petitioners, all included a clause reading as follows:

Anything in this contract to the contrary notwithstanding, it is understood and agreed that the Annuitant shall have no rights under the Contract on his sole signature EXCEPT the right to change and successively change the beneficiaries named to receive payment in the event of his decease. Any and all other rights, options or benefits contained in the contract or permitted by the Insurance Company, including, but without limitation of the foregoing, the right to receive dividends, assign the contract as collateral security, or surrender the same to the Company for its cash value, shall be reserved to the Annuitant, but only with the written consent of DRAPER & COMPANY INCORPORATED, its successors and assigns; PROVIDED, HOWEVER, that if said DRAPER & COMPANY INCORPORATED, its successors and assigns, shall give its consent to the exercise of any right, any amount which may be payable under the contract during the lifetime of the Annuitant by reason of the exercise of such right shall be payable to and for the sole benefit of the Annuitant. It is understood and agreed that the annuitant shall receive all annuity payments hereunder.

The policies issued by the Columbian National Life Insurance Co., when received by petitioners Draper, Green and Dana (the other six petitioners received no policies from this company), and the policy issued by the Union Central Life Insurance Co., when received by petitioner Draper, all included a clause reading substantially the same as the clause just quoted from the policies issued by the John Hancock Mutual Life Insurance Co.

Draper & Co. did not at any time in 1941 or later waive the provisions requiring its consent or grant its consent to the election of any of the optional provisions contained in the annuities. In 1944 request was made of Draper & Co. to consent to the surrender of two policies for their cash value, and Draper & Co. refused its consent.

The amount of the annual premiums on the policies taken out for each annuitant was equal to one-third of his annual basic salary, in accordance with the authorizing vote. The total payments made with respect to each annuitant did not exceed the amounts authorized by the vote.

The respondent included all of the aforesaid premiums and additional amounts paid with respect to each petitioner in the 1941 taxable income of the petitioner in determining the deficiencies herein.

The intent of Draper & Co. in obtaining the aforesaid annuity policies was to provide protection for these employees through retirement annuities commencing at age 65.

In 1942, because of enactment in the Revenue Act of 1942 of new provisions relating to the deductibility of contributions by employers for the purchase of retirement annuities for employees, the foregoing plan, which did not meet such new provisions, was terminated and a new pension plan was adopted meeting such new requirements. To the date of termination of the old plan, no additional employees became eligible under that plan. The new plan was subsequently approved by the respondent, and was put into effect in 1942 and has since been continued in effect.

Following discontinuance of the plan adopted August 12, 1941, Draper & Co. and the annuitants failed to pay any additional premiums on the annuities and in 1944, pursuant to their terms, they were automatically converted into fully paid-up annuities of lesser monthly benefits commencing at age 65. The value allowed for the annual premium policies for purposes of converting was the cash surrender value at the date of conversion plus, in the case of the John Hancock Mutual Life Insurance Co. policies, a small amount of dividends which had accumulated on the policies, together with interest on those dividends. The value allowed with respect to each annuitant was as follows:

| Annuitant | Number of policies | Value allowed |
|---|---|---|
| Paul A. Draper | 4 | $25,130.77 |
| Kenneth F. Clarke | 4 | 6,072.36 |
| Genevieve McCausland | 2 | 1,518.10 |
| Adrian C. Keller | 2 | 2,783.20 |
| George W. Brown | 4 | 10,120.64 |
| Malcolm Green | 4 | 15,170.76 |
| Harry H. Hamilton | 2 | 1,771.12 |
| Alice M. Scott | 2 | 1,771.12 |
| Robert W. Dana | 4 | 15,170.76 |
| Total | 28 | 79,508.83 |

The value thus allowed was less than the total payments of $92,319.11 made in 1941.

The petitions were filed within three years from the time the taxes were paid for the year 1941.

As previously indicated, the question here involved is whether the total payments of $92,319.11, representing 1941, 1942, and 1943 premiums, made in 1941 by Draper & Co. to the insurance companies for the 28 retirement annuity policies which were delivered to petitioners in 1941 constituted taxable income to petitioners in 1941 under section 22 (a) of the Internal Revenue Code in the form of additional compensation received by petitioners in the taxable year 1941. The contentions of the parties relative to this question are substantially the same as they were in *Robert P. Hackett*, 5 T. C. 1325. As to the payments made by Draper & Co. for the 1941 annual premiums specified in the 28 policies in the total amount of $31,500, we can see no difference in principle between the issue here involved and the issue that was involved in the *Hackett* case. In the *Hackett* case the premiums paid by the employer on the annuity policies purchased for its employees were lump sum premiums which covered the entire cost of the policies, whereas in the instant case the premiums paid were annual premiums, but we do not think this makes any distinction in principle between the two cases. It was the premiums paid for and on behalf of the employees in each case as part of their compensation which were taxable. See *George Matthew Adams*, 18 B. T. A. 381; *Frank D. Yuengling*, 27 B. T. A. 782; affd., 69 Fed. (2d) 971. Neither Draper & Co. nor Nichols & Co., the corporation employer involved in the *Hackett* proceedings, had set up a pension trust in behalf of its employees, and for that reason section 165 of the code was not involved in either case. In the *Hackett* case we held that the proceedings there involved were controlled by *Renton K. Brodie*, 1 T. C. 275; *Miller* v. *Commissioner*, 144 Fed. (2d) 287; *William E. Freeman*, 4 T. C. 582; *Oberwinder* v. *Commissioner*, 147 Fed. (2d) 255; and *Hubbell* v. *Commissioner*, 150 Fed. (2d) 516. For the reasons there given, we hold that the same cases control the instant proceedings as far as the total amount of $31,500 is concerned,

and, therefore, we affirm the respondent's determinations in the instant proceedings to that extent.

Relative to the advance premium payments for 1942 and 1943 in the total amount of $60,819.11, we are of the opinion that these payments are not income to petitioners in the year 1941. In *Draper & Co.*, 5 T. C. 822, 841, the respondent contended that, since these advance premiums "were not required to have been paid by the petitioner [Draper & Co.] and would have been refunded to it by the respective insurance companies if a demand had been made by petitioner prior to the time such premiums became due under the policies," Draper & Co., being on the accrual basis, was not entitled to claim deduction in 1941 for advance payments of such amounts which it was not obligated to pay until 1942 and 1943. In sustaining that contention we paid in part:

The fact that petitioner did not intend in 1941 to ask for a refund of any of these advance premiums it seems to us is immaterial. The fact remains that it was not obligated to make payment of these advance premiums to the insurance companies until such premiums became due, and, having made them, it could have had them repaid by the insurance companies at any time prior to the time such premiums became due.  *  *  *

We think the deposit with the insurance companies by Draper & Co. in 1941 of amounts sufficient to cover the 1942 and 1943 premiums when they became due did not give petitioners any greater taxable income in 1941 than if the employer had not made such payments, because the employer had the right at all times in 1941 to recover such payments from the insurance companies and thereby leave the petitioners in the same position as though the payments had not been made.

The facts of the instant cases do not bring them within the rule announced by the Supreme Court in *North American Oil Consolidated* v. *Burnet*, 286 U. S. 417, which was to the effect that, where a taxpayer has received earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to return for taxation, even though it may still be claimed that he is not entitled to retain the money.

In the instant case the premiums for the annuity policies paid by Draper & Co. for the year 1941 in the amount of $31,500 were beyond recall and, as we have held above, represented additional compensation taxable to petitioners for the year 1941. However, the $60,819.11 deposited by Draper & Co. with the insurance companies to take care of 1942 and 1943 premiums was not, as we have pointed out, paid beyond recall. If the 1942 premiums had become due and the amounts on deposit with the insurance companies to pay 1942 premiums had been used for such purpose, then such amounts would have been paid beyond recall and, under the holding we have herein made, would have been income to the petitioners in that year and not in 1941, they being on the cash basis. The same would be true as to

the amounts deposited by Draper & Co. with the insurance companies for the 1943 premiums. These 1942 and 1943 premiums were not due until well along in 1942 and 1943 and it was not until then that the money so deposited with the insurance companies was used to pay the premiums then due.

Mertens, in his Law of Federal Income Taxation, vol. 2, sec. 12.44, says.

§ 12.44—Receipt of Compensation Subject to Possible Return. Even physical receipt is not always sufficient to make a payment taxable, as where it is received subject to the obligation to return it if it is disallowed as a deduction to the payer. * * * [Citing *Eakins* v. *United States*, 36 Fed. (2d) 961, and *V. T. Lilly*, 14 B. T. A. 703.]

We hold, therefore, that the respondent is sustained in including in petitioners' taxable income for 1941, under section 22 (a) of the code, the 1941 premiums in the total amount of $31,500 paid by Draper & Co. on the 28 policies delivered to petitioners in that year, and that the respondent is reversed in including likewise in petitioners' taxable income for 1941 the advance payments of the 1942 and 1943 premiums in the total amount of $60,819.11.

*Decisions will be entered under Rule 50.*