STERNHAGEN, *J.*, agrees with the above.

RICHARD R. DEUPREE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 109182. Promulgated November 24, 1942.

*F. F. Dinsmore, Esq.*, for the petitioner.
*DeWitt M. Evans, Esq.*, for the respondent.

## OPINION.

BLACK, *Judge:* In the stipulation of facts which was signed by the parties there was embodied this language: "this stipulation or any portion thereof may be offered in evidence in the trial of this cause by either party with the same force and effect as if the same were duly proved by the testimony of witnesses, reserving to each party the right to question the admissibility and relevancy of any fact admitted herein * * *." When the stipulation was presented at the hearing petitioner objected to paragraphs 3 and 4 thereof and also objected to that part of paragraphs 5 and 6 which included any reference to the year 1939. The ground of the objection was that the facts therein stated were not relevant and material to any issue in controversy. With the approval of the presiding Member, the argument in reference to the objections above stated was to be presented in the

brief of petitioner and the admissibility of such evidence was then to be ruled upon.

Paragraph 3 of the stipulation of facts contains a copy of a resolution of the board of directors of the Procter & Gamble Co. passed on June 12, 1934, and paragraph 4 contains an amendment of that resolution passed by the board of directors on July 6, 1937. Petitioner in his brief states his objections to the introduction in evidence of these resolutions, which objections in substance are that the origin of the funds used by the Procter & Gamble Co. for the purchase of the annuity contracts is entirely immaterial and irrelevant. We do not agree to the soundness of this objection and, therefore, we overrule it. Accordingly, the resolutions are admitted in evidence and have been incorporated in our findings of fact herein.

Petitioner's objection to the inclusion of the year 1939 in paragraphs 5 and 6 of the stipulation of facts is based upon the fact that the deficiency involved in this proceeding is for the taxable year 1938 and petitioner contends that whether an annuity contract was bought by the Procter & Gamble Co. for the petitioner in the year 1939 and any cash payments were made to petitioner in the year 1939 is irrelevant and immaterial to any issue in this proceeding. We think this objection is sound. The taxable year 1938 is the year which we have before us and no good reason appears as to why similar action taken by the Procter & Gamble Co. in 1939 with respect to bonuses and annuity contracts paid to petitioner as additional compensation would throw any light as to what our decision should be on the issue involved in this proceeding. Accordingly, that part of the stipulation of facts which refers to cash bonuses paid and the annuity contract purchased for petitioner by the company in 1939 is excluded from evidence and we have omitted any reference to 1939 in our findings of fact.

In his determination of the deficiency, the Commissioner relied upon section 22 (a) of the Revenue Act of 1938. That section reads in part as follows:

SEC. 22. GROSS INCOME.

(a) GENERAL DEFINITION.—"Gross income" includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, * * *

There is of course no question but that if the $50,000 involved in this proceeding had been paid to petitioner in cash, he would have been taxable thereon. Petitioner concedes that fact. He contends, however, that the $50,000 was not paid to him in cash, but that instead the company purchased an annuity policy for him and used the $50,000 to pay the lump sum premium for the contract and delivered to him the annuity contract and not $50,000 in cash and that the annuity contract had no fair market value and no realizable value and

hence petitioner was not in receipt of the $50,000 income with which he is charged in the deficiency notice.

It is not the contention of Commissioner that petitioner actually received the $50,000 in cash from the company, but that it was constructively received by him and that he is taxable thereon just the same as if it had been directly paid to him.

If the Commissioner is correct in this contention, then there is no need to consider other questions raised such as the lack of any fair market value or realizable value of the annuity contract because of its nonassignability and lack of any cash surrender value.

Paul and Mertens, in their Law of Federal Income Taxation, vol. 1, sec. 9.02, in discussing the underlying idea of the doctrine of constructive receipt, among other things, say:

It has been suggested that the simplest cases of constructive receipt are those in which "(1) the taxpayer is immediately entitled to money; (2) the money is immediately available to him; and (3) his failure to receive it in cash is due entirely to his own volition." * * *

Measured by the above description of what constitutes constructive receipt, what are the facts present in the instant case which bring petitioner within the ambit of the doctrine? These facts, as we glean them from the record are: On June 2, 1934, the board of directors of the Procter & Gamble Co. adopted a resolution for a five-year plan of additional compensation to certain of its executives and employees who were regarded as being largely responsible for the success of its business. The president of the company, who was petitioner, was to determine the persons who were to receive this extra compensation, except the board of directors itself was to determine to what extent, if any, the president of the company should participate in the distribution of the fund.

By an amendment to the resolution of June 12, 1934, which was adopted July 6, 1937, it was provided, among other things:

* * * The President also shall be entitled to share in the distribution of the fund, and shall receive an amount equal to fifteen percent (15%) thereof, but in no event to exceed one hundred thousand Dollars ($100,000.00) for any fiscal year, and this share shall be paid to him without further action of this Board.

Thus it will be seen that petitioner's right to participate in the extra compensation fund, which was at first made contingent upon affirmative action by the board of directors, was by the amendment adopted July 6, 1937, made absolute without any further action upon the part of the board of directors.

In the taxable year 1938 there was established a fund in accordance with the resolutions set forth above and out of this fund the petitioner was entitled to receive his portion in cash, and out of his portion the company purchased an annuity contract for petitioner

and paid $50,000 therefor. As to the purchase of this annuity contract the stipulation of facts reads:

At the direction of the petitioner the Procter & Gamble Company on or about August 9, 1938 purchased and delivered to the petitioner at a cost to it of $50,000.00, one certain special single premium retirement annuity contract of the Connecticut General Life Insurance Company, * * *

The resolutions which were adopted by the board of directors, incorporated in our findings of fact, providing for the setting up of a special fund to pay additional compensation to certain of the executives and employees of the company, including its president, did not make any mention of the purchase of annuity contracts as a part of the plan. The record shows that the decision to make the purchase of annuity contracts a part of the plan was one wholly made by petitioner, acting in his capacity as president of the company. So far as the record shows, the board of directors of the company had nothing to do with this feature of the plan. Therefore, it seems plain that petitioner's failure to receive $50,000 in cash instead of an annuity policy costing $50,000 was due entirely to his own volition. Under such circumstances we think the doctrine of constructive receipt applies. Paul and Mertens, vol. 1, sec. 9.12, states:

* * * One of the leading examples of income constructively received is furnished by transactions in which items of income (the proceeds of the sale of property or compensation for services rendered or some other type of income) are paid to a third party designated by the taxpayer. * * *

The Supreme Court, in the leading case of *Corliss* v. *Bowers*, 281 U. S. 376, among other things, said:

* * * The income that is subject to a man's unfettered command and that he is free to enjoy at his own option may be taxed to him as his income, whether he sees fit to enjoy it or not. * * *

In the instant case the $50,000 additional compensation was not only at petitioner's unfettered command, but he saw fit to enjoy it by directing Procter & Gamble to purchase for him an annuity contract costing $50,000. It seems to us that this income was, at his own direction, just as effectively used for petitioner's benefit as if it had been paid over to him and he had purchased directly the annuity policy from the insurance company.

In contending that the doctrine of constructive receipt should not be applied in the instant case, the petitioner cites and strongly relies upon *A. P. Giannini*, 42 B. T. A. 546; affd., 129 Fed. (2d) 638. We think that case is clearly distinguishable on its facts. Facts which, we think, distinguish the *Giannini* case from the instant case were stated by the Circuit Court in its opinion affirming the Board of Tax Appeals, as follows:

Now, turning again to the instant case. The findings of the Board, supported by the evidence, are to the effect that the taxpayer did not receive the

money, and that he did not direct its disposition. All that he did was unqualifiedly refuse to accept any further compensation for his services with the suggestion that the money be used for some worth while purpose. So far as the taxpayer was concerned, the corporation could have kept the money. All arrangements with the University of California regarding the donation to the Foundation were made by the corporation, the taxpayer participating therein only as an officer of the corporation.

In the instant case the petitioner not only did not refuse to accept the $50,000 as additional compensation, but he directed that it be used in the purchase of the annuity contract which was delivered to him.

These facts, it seems to us, clearly distinguish the instant case from the *Giannini* case and justify the taxation of the income in question to petitioner.

Reviewed by the Court.

*Decision will be entered for respondent.*

Smith and Mellott, *JJ.*, concur only in the result.

---

Van Fossan, *J.*, dissenting: I respectfully dissent. I do not regard this as a proper case in which to apply the doctrine of constructive receipt.