CHARLES L. JONES AND ERSIE C. JONES, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 111443. Promulgated October 25, 1943.

*George R. Sherriff, Esq.*, and *Albert S. Rockwood, Esq.*, for the petitioners.

*James C. Maddox, Esq.*, for the respondent.

### OPINION.

MELLOTT, *Judge:* Petitioner concedes that he erroneously reported amounts received as nontaxable income.[4] He argues, however, that they should not be included in gross income, but should be taxed as annuities under section 22 (b) (2), I. R. C.[5] The first question, therefore, as indicated at the outset, is: Where an employer purchases and pays for a contract under which a retired employee is paid an annuity, shall the employee include in his gross income the entire amount received, or may he be permitted to exclude from gross income the excess of the amount received in the taxable year over an amount equal to 3 per centum of the aggregate premium or consideration paid by the employer for such annuity until the aggregate amount so excluded from gross income equals the aggregate premiums or consideration paid by the employer for the annuity?

The parties attempt to support their conflicting views by citing and discussing cases deemed to be basically analogous and by discussing the legislative history of certain sections of the revenue acts and administrative rulings under them. Petitioner points to the amendment of section 22 (b) (2), *supra*, made by section 162 (c) of the Revenue Act of 1942.[6] The amendment is not retroactive to the taxable years. Petitioner suggests that if the law prior thereto were as contended by respondent there would have been no occasion to enact it. The sections of the earlier acts are quoted and discussed (sec. 213 (b) (2), Revenue Act of 1924; sec. 213 (b) (2), Revenue Act of 1926;

---

[4] Upon brief it is stated: "Petitioners admit that 3% of the total premiums paid is taxable in each of the years 1939 and 1940."

[5] ANNUITIES, ETC.—Amounts received (other than amounts paid by reason of the death of the insured and interest payments on such amounts and other than amounts received as annuities) under a life insurance or endowment contract, but if such amounts (when added to amounts received before the taxable year under such contract) exceed the aggregate premiums or consideration paid (whether or not paid during the taxable year) then the excess shall be included in gross income. Amounts received as an annuity under an annuity or endowment contract shall be included in gross income; except that there shall be excluded from gross income the excess of the amount received in the taxable year over an amount equal to 3 per centum of the aggregate premiums or consideration paid for such annuity (whether or not paid during such year), until the aggregate amount excluded from gross income under this chapter or prior income tax laws in respect of such annuity equals the aggregate premiums or consideration paid for such annuity. In the case of a transfer for a valuable consideration, by assignment or otherwise, of a life insurance, endowment, or annuity contract, or any interest therein, only the actual value of such consideration and the amount of the premiums and other sums subsequently paid by the transferee shall be exempt from taxation under paragraph (1) or this paragraph.

[6] (B) EMPLOYEES' ANNUITIES.—If an annuity contract is purchased by an employer for an employee under a plan with respect to which the employer's contribution is deductible under section 23 (p) (1) (B) * * * the employee shall include in his income the amounts received under such contract for the year received except that if the employee paid any of the consideration for the annuity the annuity shall be included in his income as provided in subparagraph (A) of this paragraph, the consideration for such annuity being considered the amount contributed by the employee. * * *

sec. 22 (b) (2), Revenue Acts of 1928 and 1932; sec. 22 (b) (2), Revenue Acts of 1934, 1936, and 1938; and sec. 22 (b) (2), I. R. C.). It is unnecessary to set them out here. Summarizing them, it may be stated that prior to 1926 a recovery of premiums paid by way of annuity payments was to be excluded from gross income only if received by the insured as a return of premiums paid by him. By the amendment of 1926 the words "by the insured" and "by him" were eliminated, the expressed intention of Congress being to grant "to the various persons to whom the payments are made an exemption of an amount equal to their proportionate shares of the premiums paid" rather than limiting the exemption to a return to the insured of a portion of the premiums paid by him.[7] Following this amendment the Treasury Department ruled that taxable income would result to the donee-beneficiary of an annuity only when the aggregate of the annuity payments received exceeds the amount of the premiums or consideration paid by the insured.[8]

The section of the Internal Revenue Code shown in the margin *supra* was first enacted in 1934, the principal amendment to the former section being the addition of the language reducing the exclusion to the excess of the annuity payments over 3 per centum of the total premiums or consideration paid. The Treasury Department ruled that under it a widow, receiving payments under a contract purchased by her husband which provided for monthly payments to him for life and then to her for her life, should compute her taxable income from that source by excluding from her gross income the excess of the amount received each year over 3 per centum of the premium or consideration paid until the aggregate of the sums recovered under the Revenue Act of 1934 and prior Revenue Acts equals the consideration paid. The entire amount received thereafter is to be included in her gross income.[9] It was ruled, however, that the "aggregate of the amounts contributed by the employee beneficiary toward the purchase of a retirement annuity, but not the amount contributed by the employer, constitutes 'the aggregate premiums or consideration paid for such annuity' within the meaning of section 22 (b) of the Revenue Act of 1934."[10] The same ruling held that contributions made by an employer toward the purchase of annuity contracts for the benefit of his employees did not constitute income constructively received by the employees.

Petitioner, calling our attention to some of the rulings, relies upon

[7] See Report of Conference Committee, H. R. Rept. No. 356, 69th Cong., 1st sess. Cf. H. R. Rept. No. 1, *idem.* C. B. 1939–1, Part 2, pp. 364 and 347.
[8] I. T. 2635, C. B. XI–2, p. 63.
[9] I. T. 3033, C. B. XV–2, p. 131.
[10] I. T. 2891, C. B. XIV, 1, p. 50; cf. I. T. 2874, C. B. XIV–1, p. 49; I. T. 3346, C. B. 1940–1, p. 62; I. T. 2984, C. B. XV–1, p. 87.

the well established principle that administrative interpretations are entitled to great weight. *Brewster* v. *Gage*, 280 U. S. 327; *Helvering* v. *Winmill*, 305 U. S. 79. The argument, of course, is as applicable to the rulings in the last group (not cited by petitioner) as it is to those relied upon by him. It is perfectly clear from the series of rulings that section 22 (b) (2) of the Revenue Act of 1934, which was continued in the same form in all later acts, has always been construed to limit the exclusion to the one who actually made the payment or his donee-beneficiary (usually one related to him by blood or marriage) and, so far as we have been able to find, no tribunal has ever held that an employee is entitled to deduct from his gross income the premium or consideration paid by his employer for an annuity unless the circumstances surrounding the payment were such as to require the employee to include the cost of the annuity in his gross income in the year it was purchased. Cf. *Renton K. Brodie*, 1 T. C. 275; *Richard R. Deupree*, 1 T. C. 113.

The rule of the *Brodie* and *Deupree* cases *supra* is not relied upon to any considerable extent by either party, though mentioned by each of them upon brief. In those cases the taxpayers' employer had adopted a plan for "special remuneration" for some of its executives. Deupree, the president, was to determine the persons to receive the additional compensation (including himself) and the amount to be paid to each. At his direction the employer purchased annuities in substantial amounts for him and his associates. As to Deupree, it was held that he was constructively in receipt of income. We therefore approved the Commissioner's action, including the amount in his gross income. The doctrine of constructive receipt was held to be inapplicable to Brodie and his associates (other than Deupree); but since the contracts, purchased and delivered to them, were valuable, were intended as extra compensation for services performed in the taxable year, and were issued upon their written applications without any restrictions or conditions attached as to term of employment, cessation of employment, or contribution by them, we held that the recipients were taxable under the broad and comprehensive language of section 22 (a) of the revenue act. Whether a similar conclusion would have been justified if the Commissioner had attempted to include the amount expended by petitioner's employer in his gross income for the year 1934 is not before us. At the risk of supererogation it may be pointed out that most of the circumstances relied upon in the *Brodie* case appear to have been absent when the payment was made by petitioner's employer. In any event the petitioner obviously relied upon the rulings and interpretation referred to above and refrained from including in his gross income for 1934 any part of the substantial sum paid by his employer to the insurance company for

his annuity. We do not suggest, however, that he is now estopped from making his present contention. Cf. *Bennett* v. *Helvering*, 137 Fed. (2d) 537.

In *Raymond J. Moore*, 45 B. T. A. 1073, the Commissioner urged that there should be included in the taxpayers' gross income the amount paid by an employer to the trustee of a pension plan and used by it in the purchase of contracts for the benefit of the participating employees. It was pointed out in the opinion that the Commissioner was basing his action upon the assumption that the policies were life insurance contracts and that he was not contending, "if the trust is within section 165 *supra*, and if the present policies cover retirement annuities, the payment of premiums therefore by the trustee would constitute a distribution to the insured of the amount of the premium paid." In that connection a comparatively recent ruling of the Income Tax Unit was set out,[11] the essence of which was that the amounts contributed by the employer toward the purchase of annuity contracts for its employees were not required to be included in the employees' gross income for those years but, upon retirement, "the entire amount of each annuity payment will be taxable income to the employee if he made no contribution toward the purchase of the retirement annuity. If he made contributions, he will be taxed in the manner and to the extent provided in section 22 (b) (2) of the Internal Revenue Code \* \* \*." We, in effect, approved the ruling and held that the portion of the premium paid which was applicable to the annuity feature of the contract was not to be included in the taxpayer's income for the year in which the payment was made. Cf. *Phillips H. Lord*, 1 T. C. 286. While it is true, as petitioner points out, that in the cited case a trust for employees was involved whereas none exists here, that is relatively unimportant. The issue was substantially the same as would have existed if the Commissioner had attempted to include the amount paid by petitioner's employer to the insurance company in his gross income for 1934—was it "actually distributed or made available" to him? In other words the Commissioner in his ruling and the Board of Tax Appeals in its opinion applied the same line of reasoning that was applied in the *Brodie* case, *supra*.

From what has been said it is obvious we have heretofore given our approval to all of the rulings above referred to, though the precise question now before us has been decided only by inference. If we should depart from the general scheme of the rulings and permit petitioner to recover, tax-free, all of the amount paid by his employer for the annuity rather than merely allow him "to recoup his original

---

[11] I. T. 3346, *supra*, footnote 10.

cost tax-free," as contemplated by Congress [12] in the enactment of the Revenue Act of 1934, he would be given a special tax exemption. "Provisions granting special tax exemptions are to be strictly construed." *Helvering* v. *Northwest Steel Rolling Mills, Inc.*, 311 U. S. 46. Nevertheless, if the language used by Congress justifies such a conclusion it must be reached.

The clause "aggregate premiums or consideration paid for such annuity" at first blush seems to be unambiguous and to connote that the payments need not be made by the annuitant. Ignoring for the time being the administrative interpretation, there seems to be but slight basis for a conclusion that payment need be made by any particular person. Yet there is some. First, it must be kept in mind that we are dealing with a revenue act, the purpose of which is to tax all "gains, profits, and income" including "compensation for personal service, of whatever kind and in whatever form paid." (Sec. 22 (a) of the various revenue acts.) It can not be doubted that annuities paid to former employees because of past services constitute compensation for personal services. *Noel* v. *Parrott*, 15 Fed. (2d) 669; certiorari denied, 273 U. S. 754; *Old Colony Trust Co.* v. *Commissioner*, 279 U. S. 730; *Lucas* v. *Ox Fibre Box Co.*, 281 U. S. 115; *Commissioner* v. *Bonwit*, 87 Fed. (2d) 764; certiorari denied, 302 U. S. 694; *Hooker* v. *Hoey*, 27 Fed. Supp. 489; affd., 107 Fed. (2d) 1016; *Helvering* v. *Knapp*, 121 Fed. (2d) 454, reversing 40 B. T. A. 1145; *Cora B. Beatty, Executrix*, 7 B. T. A. 726; *George Matthew Adams*, 18 B. T. A. 381; *N. Loring Danforth*, 18 B. T. A. 1221; *William J. R. Ginn*, 47 B. T. A. 41, 48. Then, too, it will be noted that the provision with reference to annuities is contained in the section dealing with amounts received under life insurance and endowment policies, which are usually purchased by the insured himself and made payable to him or to members of his family. In this connection substantially the same language is used, the expressed intention being to tax as income such amounts as "exceed the aggregate premiums or consideration paid." The obvious intention of Congress in dealing with the three types of contracts was to permit the insured or annuitant and his beneficiaries to recover tax-free the cost, i. e., the amount paid by them for the policies. This view is supported by the concluding sentence in the section, dealing with a transfer for a valuable consideration, under which only the

[12] In H. R. Rept. No. 704, 73d Cong., 2d Sess. (C. B. 1939–1, Part 2, pp. 569, 570), it is said: "The present law does not tax annuities arising under contracts until the annuitant has received an aggregate amount of payments equal to the total amount paid for the annuity. * * * The change [addition of the 3 percent clause] continues the policy of permitting the annuitant to recoup his original cost tax-free but requires him to include in his gross income a portion of the annual payments in an amount equal to 3 percent of the cost of the annuity. * * *." Cf. Senate Rept. No. 558, 73d Cong. 2d sess. (C. B. 1939–1, Part 2, p. 604).

sums actually paid by the transferee may be recovered tax-free. Moreover it accords with the general use of cost under the revenue acts. Compare, e. g., section 111, I. R. C., dealing with the determination of gain or loss upon sale, section 113, I. R. C., specifying the basis to be used, and section 23 (1) and (m), allowing depreciation and depletion. Thus we need not rely solely upon the administrative rulings to support our conclusion that Congress intended to limit the deduction under section 22 (b) (2), *supra*, to the aggregate premiums or consideration paid by the annuitant except where, as in the *Deupree* and *Brodie* cases, *supra*, the annuitant has been in receipt of taxable income in the year in which the annuity was purchased for him by his employer.

We approve the Commissioner's determination that the amount received by petitioner from the insurance company during each of the taxable years is to be included in his gross income. In view of the conclusion which has been reached it is unnecessary to discuss what respondent, upon brief, characterizes as his "plea of estoppel."

Respondent's affirmative claim for an increased deficiency is based upon the fact that petitioner had elected to receive a lesser amount during his life ($33,000 per annum instead of $41,250) to the end that his wife should receive an annuity of $24,882.53 in the event she should outlive him. The method by which this was accomplished is set out in the findings and footnote 3. Respondent cites *Lucas* v. *Earl*, 281 U. S. 111; *Helvering* v. *Horst*, 311 U. S. 112; *Helvering* v. *Eubank*, 311 U. S. 122, and opinions by this tribunal in which one earning income has assigned to another his right to receive it. Starting from the premise that the annuity was compensation for services rendered, respondent concludes that petitioner is taxable upon the portion which, he assumes, is being currently used to purchase an annuity for petitioner's wife.

At respondent's request finding has been made that the difference between a single life annuity of $41,250 and $33,000, if paid to the insured annually during his life, would have created a fund sufficient to provide for an annuity of $24,882.53 for his wife upon his death if one survived him. While this finding is literally within the evidence, it must be remembered that the witness upon whose testimony it is based, an actuary for the insurance company, was merely acquiescing to questions asked of him in nontechnical language with reference to the essence of the actuarial computation. (See footnote 3, *supra*.) Actually, however, petitioner simply exercised a right given him under the contract (cf. *Katharine C. Pierce*, 2 T. C. 832, to receive retirement annuity payments "for a reduced amount * * * and that it * * * be continued, after his death, to his designated

dependent, should such person survive him."[13]   Having made such election, he could not thereafter make another without the consent of the insurance company.   In other words the maximum amount which he may now receive is $33,000 per annum.

Respondent places substantial reliance upon *Duran* v. *Commissioner*, 123 Fed. (2d) 324, and quotes some language which he deems to be especially pertinent to the present question.   In that case the taxpayer, having served as agent of an insurance company for 20 years and having sold more than $50,000 of life insurance each year, became entitled to receive monthly payments so long as he should live, provided he did not enter the service of any other life insurance company.   Prior to 1934 he assigned to his sister all sums to be subsequently paid, with provision that in the event she should predecease him all benefits under the assignment should revert to him.   The court applied the rationale of *Helvering* v. *Eubank*, *supra*, and approved our holding that the amount received by the sister must be included in Duran's income.   The language upon which respondent places his reliance is:

"*   *   * For income tax purposes, the situation was the same as though the insurance company had paid the sums to him and he had passed them on to his sister.   *   *   *"

He says: "the situation [here] is the same as though the insurance company had paid petitioner $41.250 and he had returned to it $8,250."   We do not agree.   His own careful analysis elsewhere in his brief shows what occured.   Petitioner converted $33,132.53 of his annuity to a joint and survivorship annuity of $24,882.53.   He is entitled to receive this amount plus $8,117.47, or $33,000, for the remainder of his life.   If he predeceases his wife she will receive the $24,882.53 for the remainder of her life.   Assuming that she will include in her gross income the amount which she will receive—and without attempting to judge a controversy not before us it is difficult to see why she will not be required to do so—

[13] Section 14 of "III General Provisions" of the contract provides, *inter alia:*

"At any time prior to the normal retirement date and provided Retirement Annuity payments have not been commenced, an Employee may request the Insurance Company that his Retirement Annuity commence on the normal retirement date for a reduced amount, as determined in the second succeeding paragraph, and that it shall be continued, after his death, to his designated dependent, should such person survive him ; provided, however, that, if the death of the Employee or such person occur prior to the normal retirement date or optional retirement date, whichever date is earlier, such request shall be inoperative.   If an Employee who has exercised the option described in this paragraph should remain in active service subsequent to the normal retirement date and should die before the commencement of Retirement Annuity payments, the Insurance Company will commence to pay to his designated dependent, should such person survive him, the reduced amount of Retirement Annuity as determined in the second succeeding paragraph.

"*   *   * Such request, when granted by the Insurance Company, cannot be rescinded without its consent.   The reduced amount of Retirement Annuity, payable to an Employee who has requested to have the Retirement Annuity continued after his death to a designated dependent depends upon the age and sex of both the Employee and the designated dependent.

it is obvious that every dollar paid under the· contract will bear its fair burden of tax. The administrative difficulty of attempting to evaluate the wife's annuity for the purpose of the gift tax, the burden of requiring an annuitant to pay a large tax upon income which he has not received and the inequities which would be bound to result if repondent's present contention be upheld are all obviated by applying the common-sense principles set out in his rulings. Respondent's claim for an increased deficiency is denied.

Reviewed by the Court.

> *Decision will be entered approving the deficiencies as determined.*