*Decision will be entered under Rule 50.*

F. E. CARD, PETITIONER, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

W. S. ADAMS, PETITIONER, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 35870, 35871.   Promulgated June 17, 1953.

*Thomas M. Davies, Esq.*, and *Oscar R. Martin, C. P. A.*, for the petitioners.

*Mark Townsend, Esq.*, for the respondent.

624

OPINION.

*Issue 1.*

WITHEY, *Judge:* The controversy on this issue involves but one question: What is the meaning of the words "aggregate premiums or consideration paid" as the phrase is used in section 22 (b) (2) (A),[1]

---

[1] SEC. 22. GROSS INCOME.

(b) EXCLUSIONS FROM GROSS INCOME.—The following items shall not be included in gross income and shall be exempt from taxation under this chapter:

\* \* \* \* \* \* \*

(2) ANNUITIES, ETC.—

(A) In General.—Amounts received (other than amounts paid by reason of the death of the insured and interest payments on such amounts and other than amounts received as annuities) under a life insurance or endowment contract, but if such amounts (when added to amounts received before the taxable year under such contract) exceed the aggregate premiums or consideration paid (whether or not paid during the taxable year) then the excess shall be included in gross income. Amounts received as an annuity under an annuity or endowment contract shall be included in gross income; except that there shall be excluded from gross income the excess of the amount received in the taxable year over an amount equal to 3 per centum of the aggregate premiums or consideration paid for such annuity (whether or not paid during such year), until the aggregate amount excluded from gross income under this chapter or prior income tax laws in respect of such annuity equals the aggregate

Internal Revenue Code, and as the respondent has used the phrase in Regulations 111, section 29.22 (b) (2)–1?[2] Petitioners contend the quoted words mean aggregate premiums paid *by anyone*. Respondent, on the other hand, seeks to limit the effect of the language to premiums paid only *by the taxpayer and not by anyone else.*

Adams and Card in 1945 received the sums of $8,518.20 and $12,406.26, respectively, as the cash surrender value of endowment life insurance policies. They, individually, had paid premiums upon the policies in the respective amounts of $3,507 and $4,331.44. Their employer, State Securities, had by the date of surrender paid premiums on the policies in the respective amounts of $7,041 and $8,861. Petitioners contend that under section 22 (b) (2) (A) they are entitled to exclude from gross income for 1945 that portion of amounts received on surrender of their policies which equals the total premiums paid by them individually and by their employer. Respondent contends that the taxable income from the insurance proceeds must be determined by the difference between premiums paid by each petitioner only and the amount realized by each upon surrender of the policies.

This Court in *Charles L. Jones*, 2 T. C. 924, has, in effect, settled the narrow question here first raised by petitioners. We there said:

The clause "aggregate premiums or consideration paid for such annuity" at first blush seems to be unambiguous and to connote that the payments need not be made by the annuitant. Ignoring for the time being the administrative interpretation, there seems to be but slight basis for a conclusion that payment need be made by any particular person. Yet there is some. First, it must be kept in mind that we are dealing with a revenue act, the purpose of which is to tax all "gains, profits, and income" including "compensation for personal service, of whatever kind and in whatever form paid." * * * Then, too, it will be noted that the provision with reference to annuities is contained in the section dealing with amounts received under life insurance and endowment

premiums or consideration paid for such annuity. In the case of a transfer for a valuable consideration, by assignment or otherwise, of a life insurance, endowment, or annuity contract, or any interest therein, only the actual value of such consideration and the amount of the premiums and other sums subsequently paid by the transferee shall be exempt from taxation under paragraph (1) or this paragraph. The preceding sentence shall not apply in the case of such a transfer if such contract or interest therein has a basis for determining gain or loss in the hands of a transferee determined in whole or in part by reference to such basis of such contract or interest therein in the hands of the transferor. This subparagraph and paragraph (1) shall not apply with respect to so much of a payment under a life insurance, endowment, or annuity contract, or any interest therein, as, under section 22 (k), is includible in gross income.

[2] SEC. 29.22 (b) (2)–1. LIFE INSURANCE—ENDOWMENT CONTRACTS—AMOUNTS PAID OTHER THAN BY REASON OF THE DEATH OF THE INSURED.—Amounts received under a life insurance or endowment policy (other than amounts paid by reason of the death of the insured, interest payments on such amounts, amounts received as annuities, and amounts of periodic payments included in gross income under section 22 (k)) are not taxable under the aggregate of the amounts so received (when added to the amounts received before the taxable year under such policy) exceeds the aggregate premiums or consideration paid, whether or not paid during the taxable year.

policies, which are usually purchased by the insured himself and made payable to him or to members of his family. In this connection substantially the same language is used, the expressed intention being to tax as income such amounts as "exceed the aggregate premiums or consideration paid." *The obvious intention of Congress in dealing with the three types of contracts was to permit the insured or annuitant and his beneficiaries to recover tax-free the cost, i. e., the amount paid by them for the policies.* This view is supported by the concluding sentence in the section, dealing with a transfer for a valuable consideration, under which only the sums *actually paid by the transferee may be recovered tax-free.* Moreover it accords with the general use of cost under the revenue acts. Compare, e. g., section 111, I. R. C., dealing with the determination of gain or loss upon sale, section 113, I. R. C., specifying the basis to be used, and section 23 (1) and (m), allowing depreciation and depletion. Thus we need not rely solely upon the administrative rulings to support our conclusion that Congress intended to limit the deduction under section 22 (b) (2), *supra*, to the aggregate premiums or consideration paid by the annuitant except where, as in the *Deupree* and *Brodie* cases, *supra*, the annuitant has been in receipt of taxable income in the year in which the annuity was purchased for him by his employer. [Emphasis supplied.]

It is true that the *Jones* case involved an annuity contract, but we there noted that the words "aggregate premiums or consideration paid" applied in like manner to all three types of contracts referred to in section 22 (b) (2). With respect to the endowment policies with which we are here concerned, the quoted phrase encompasses only the premiums "paid" by the respective petitioners. As to what meaning is to be ascribed the word "paid" petitioners have an alternative argument.

Petitioners contend that should section 22 (b) (2) (A) be construed to exclude from gross income only such portion of the proceeds from their endowment policies as represents the premiums paid by them individually, then, they argue, even premiums paid by the employer are to be properly considered to have been paid by petitioners. Their contention is based upon the theory of constructive receipt, i. e., that petitioners are to be considered to have paid the premiums actually paid by their employer as such payments represent income to petitioners in the years paid under section 22 (a). They lean heavily upon the fact that all the incidents of ownership in the endowment policies were held by themselves and that none were at any time possessed by the employer. We have found as a fact that such is the case. If the premiums paid by their employer were constructively received by them in the years in which paid or if the premiums were income to them under the broad terms of section 22 (a), petitioners must prevail on this issue. *Renton K. Brodie*, 1 T. C. 275; *Charles L. Jones, supra.*

Petitioners were on the cash basis. That they may be properly taxed on income which they constructively received is settled. *Renton K. Brodie, supra; Richard R. Deupree*, 1 T. C. 113. As in the

*Brodie* and *Deupree* cases, the taxpayers did not here report the employer's premium payments as income. Here the statute of limitations has closed the years in which the employer made the payments petitioners now claim were income to them.

Petitioners contend we are bound to find that the premium payments here involved were income to them in the years in which paid because of our decisions in *Deupree* and *Brodie*. On the rationale of *Deupree* they contend we must hold the employer's premium payments to be income on the basis of constructive receipt. On the rationale of *Brodie*, should we find there was no constructive receipt, they contend we must hold such premium payments to be income under the broad terms of section 22 (a).

In both *Brodie* and *Deupree* the decision of the Court turned almost entirely upon the facts respecting the entire transaction wherein, and as a result of which, premium payments were made by the employer. Of the many cases cited in petitioners' brief in support of their contention, the following cases also demonstrate the virtual necessity of a showing regarding the facts and circumstances surrounding payment of an employee's premiums by an employer and the great stress laid upon such facts and circumstances in the Court's decisions: *Deupree, supra; Brodie, supra; United States* v. *Drescher* (C. A. 2), 179 F. 2d 863; *George Matthew Adams*, 18 B. T. A. 381; *Canaday* v. *Guitteau* (C. A. 6), 86 F. 2d 303; *Robert P. Hackett*, 5 T. C. 1325, affd. (C. A. 1) 159 F. 2d 121; *E. T. Sproull*, 16 T. C. 244. It could be that sufficient proof of such facts and circumstances is available in this case. If so, we are at a loss to understand the reason why such evidence was not presented by petitioners. We note in that connection that they were at all times pertinent hereto virtually in control of their employer and were its two top flight officials. It is presumed that had they desired to vote themselves additional compensation, a bonus, gift, dividend, or corporate distribution by way of payment of the insurance premiums here involved they could have done so, and it may be they did so but we are completely in the dark with respect thereto. Indeed, if such evidence were in existence, it is fair to presume it would be readily available to these petitioners. Lack of such proof lends an ambiguity to the stipulated facts. The stipulation contains a statement that the employer "paid" the insurance premiums here involved. Had the facts and circumstances surrounding this transaction been presented to us, the character of such payment would in all probability have been clear. Such a showing is an absolute necessity for decision. We are bound by the presumption in the genesis of this case that the respondent is correct in his determination that the employer's premium payments did not constitute income to petitioners in the years paid. It was petitioners'

burden to overcome that presumption. Due to a complete lack of evidence with respect to the transaction above discussed, petitioners have failed to sustain their burden. We, therefore, find for the respondent on this issue.

*Issue 2.*

Petitioner Card had in years prior to the tax year here involved rented his 3,500-acre cattle ranch on a share basis under a written lease. It was so rented when his son graduated from the University of Nebraska. Card and his son entered into an oral agreement that at the expiration of the then existing tenancy agreement the son would manage and operate the ranch on a share basis. Due to the destruction by flood of a natural hay meadow of considerable size and great economic importance to the profitable operation of the ranch, the share basis agreement between Card and his son became untenable at least until such time as nature could restore the hay meadow to its previous state of productivity. For that reason, and to keep his son on the ranch during the interim period pending restoration of the hay meadow and thereafter, Card agreed orally to pay his son what the parties considered to be a reasonable living wage for a ranch manager under the circumstances. The amount of that wage was agreed to be $2,400 per year, which, it was shown, was a just and reasonable rate of compensation in the same locality for work of like nature. The son's salary was to be derived in the first instance from the first $2,400 of profits from the operation of the ranch, but in case such a sum was not realized from the ranch operation petitioner Card was to pay out of his own pocket the difference between ranch profits and the sum of $2,400. The son was married and he and his wife operated the ranch until the year 1942. In 1942 the son entered the armed services of the United States, whereupon the wife aided by her father managed and operated the ranch, during which period the wife paid her father for his services. In 1945 the wife's father was forced by business circumstances to return to Minnesota where he was in the business of operating a tourist resort. The wife being unable to manage and operate the ranch by herself, it was agreed by Card and his son and his wife that all of the personalty pertaining to the ranch be sold. This was done in that year and the proceeds of the sale in the amount of $7,581.54 were paid by Card to the son and the son's wife as a lump-sum settlement of all amounts due them by virtue of their original contract to operate and maintain the ranch for $2,400 per annum. In no year during the life of the contract, except the last year, were the son and his wife paid an amount equal to $2,400, either by Card or as profits from the ranch business. The sum of $7,581.54 added to amounts paid by Card in prior years did not equal the $2,400 salary he had agreed to pay.

Respondent in determining the deficiency has disallowed $5,181.54 of the sum of $7,581.54 paid by Card to his son and wife in the year 1945 and allowed the sum of $2,400. Respondent's deficiency is based upon his contention that no agreement, either oral or written, ever existed between Card and his son, and we take it from respondent's brief that he contends managerial services were not actually performed by the son and his wife. Decision on this question obviously must turn on whether or not such an agreement did exist, whether or not the services claimed to have been contracted for were actually performed, and finally whether or not the sum of $2,400 per year is reasonable compensation for such services. Petitioner has adequately sustained his burden of proof and shown that the respondent's contentions are without basis. By conceding in his finding of deficiency that $2,400 per year is a reasonable salary for services performed, particularly in a year in which the wife was performing those services virtually alone, respondent himself disposes of the questions of whether or not such services were rendered and the reasonableness of the salary paid therefor. Adequate proof has been offered that the same services were performed by the son and his wife in all years during which the contract is claimed to have been in existence. Respondent has offered no evidence of any kind to the contrary. He argues on brief largely upon the basis that it is unreasonable for us to assume that Card having theretofore rented his ranch under a specific written lease would be apt to thereafter rent it to his son on an oral contract basis, and argues therefrom that there was no such contract. In the light of the specific evidence as to the existence of the oral agreement, respondent's argument completely collapses. It is apparent to us that decision upon this issue must be for the petitioner. We so hold. Petitioner is entitled to deduct the full amount of $7,581.54.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*

---

ARUNDELL, *J.*, dissenting: The first point in this case has been submitted on a stipulation of facts and, in the circumstances, it is to be assumed that the parties have given the Court the facts which they think are necessary for it to reach a conclusion on the law. I think the facts as stipulated are sufficient for us to reach a decision on the merits and it is unfortunate for the Court to turn its decision on a failure of proof.

The petitioners herein each took out in his own name an endowment insurance policy over which he had complete control, including the right to change the beneficiary. Some of the premiums on

each policy were paid by the State Securities Company, a corporation controlled directly and indirectly by the petitioners and in which they were respectively president and vice president. The State Securities Company was named as beneficiary in each policy, but that fact is of no great consequence as each petitioner had the full right to change the beneficiary at will. Each petitioner surrendered his policy and each received for his own use the full amount of its surrender value.

Section 22 (b) (2) of the Internal Revenue Code provides that amounts received under a life insurance policy or endowment contract shall not be included in gross income, but if such amount exceeds the aggregate premiums or consideration paid then the excess shall be included in gross income. The petitioners argue, first, that the statute is specific and unambiguous and that there is no requirement that the premiums be paid personally by the insured and, second, that when the State Securities Company paid the premiums for petitioners the payments were in the nature of compensation to them as officers of State, and the amount of the premiums paid was income constructively received by petitioners at the time of the payments. It seems that the premiums paid by State should be treated as compensation to the petitioners in the year paid and that in arriving at the amount of aggregate premiums paid under the statute the premiums paid by State should be included. Cf. *Canaday* v. *Guitteau*, 86 F. 2d 303. I would hold for the petitioners on this point.

TURNER, JOHNSON, and TIETJENS, *JJ*., agree with this dissent.