Ross H. Funkhouser and Myrna Funkhouser, Petitioners *v.* Commissioner of Internal Revenue, Respondent
Arthur D. Burnett and Anne B. Burnett, Petitioners *v.* Commissioner of Internal Revenue, Respondent

Docket Nos. 5456–70, 6162–70. Filed September 11, 1972.

*Thomas C. O'Bannon,* for the petitioners.
*Robert J. Shilliday, Jr.,* for the respondent.

### OPINION

Scott, *Judge:* Respondent determined deficiencies in the Federal income taxes of petitioners Ross H. Funkhouser (hereinafter referred to as Funkhouser) and Myrna Funkhouser for the years and in the amounts as follows:

| Calendar year | Amount | Calendar year | Amount |
|---|---|---|---|
| 1964 | $89. 50 | 1966 | 103. 00 |
| 1965 | 87. 47 | 1967 | 109. 25 |

Respondent determined deficiencies in the Federal income taxes of petitioners Arthur D. Burnett (hereinafter referred to as Burnett) and Anne B. Burnett for the years and in the amounts as follows:

| Calendar year | Amount |
|---|---|
| 1966 | $80. 76 |
| 1967 | 96. 25 |

The issue for decision is whether the cost of life insurance protection provided Funkhouser and Burnett as participants under employer pension and profit-sharing plans is includable in their gross income under section 72(m)(3), I.R.C. 1954.[1]

All of the facts have been stipulated. All of the stipulated facts, including the exhibits attached to the stipulation, are found accordingly.

Petitioners Ross H. and Myrna Funkhouser, husband and wife who resided in Alachua, Fla., at the time of filing their petition in this case, filed joint Federal income tax returns for the calendar years 1964, 1965, 1966, and 1967 with the district director of internal revenue, Jacksonville, Fla.

Petitioners Arthur D. and Anne B. Burnett, husband and wife

---

[1] All references are to the Internal Revenue Code of 1954.

who resided in Alachua, Fla., at the time of filing their petition in this case, filed joint Federal income tax returns for the calendar years 1966 and 1967 with the district director of internal revenue, Jacksonville, Fla.

Funkhouser and Burnett were employed during the years here in issue, and for some years prior thereto, by Copeland Sausage Co. (hereinafter called the company). Funkhouser was employed as sausage maker in charge of mixing, blending, and seasoning the company's products, and Burnett was sales manager in charge of the company's sales force.

Funkhouser and Burnett were provided with life insurance protection in the years in question under the company's pension plan as qualified participants in the plan. Burnett elected to participate in the company's profit-sharing plan, and as a qualified participant electing life insurance protection, was provided with life insurance protection under that plan. Funkhouser designated his wife as beneficiary under his policy and Burnett designated his wife as beneficiary under all but one of his policies and under that policy designated his wife and children as beneficiaries.[2]

The company pension plan, put into effect August 1, 1960, is a qualified trust under section 401(a), exempt under section 501(a) and the company profit-sharing plan, put into effect on September 30, 1960, is also a qualified trust under section 401(a) exempt under section 501(a).

The pension plan provided that the trustee (The Atlantic National Bank of Jacksonville) would procure a life insurance contract on the life of each eligible employee, the application for the insurance and the policy or contract to designate the trustee as the sole owner of such policy or contract subject to the terms and conditions of the plan.

The insurance policies procured under the plan were on the Guaranteed Convertible Ordinary Life or Equivalent Plan which contained an option provision which would allow the conversion of the policy into an annuity contract to provide income upon retirement.

The pension plan provided for a death benefit in the event of the death of an employee before retirement. The death benefit provided for by the plan was an amount equal to the insurance in force on the life of the employee.

Each participating employee was required to designate the beneficiary to receive the death benefits under the plan at the time of filing his application for the life insurance policy or contract. The

---

[2] Burnett also had a policy which designated the trustees of the profit-sharing plan as beneficiary but that policy is not involved in the issue in this case.

employee could change the beneficiary designation from time to time and could elect an optional settlement at death by filing such designation or election with the pension committee [3] which would in turn instruct the trustee to effect the desired changes. The pension plan provided that "In no event shall any portion of such death benefits be made payable to the Company." If a participant failed to designate a beneficiary or the designated beneficiary predeceased the participant, the plan provided that "such death benefits shall be payable to the estate of the participating employee."

Specific provision was made in the plan covering employee rights under the pension plan in the event of termination of employment prior to normal retirement other than by death.[4] If termination of employment is due to total and permanent disability, the employee may be retired upon furnishing the pension committee satisfactory medical proof and evidence of such disability. If disability retirement is made effective, the full value of the insurance policy or contract held for the employee's benefit shall become vested in the employee.

Where employment is terminated for reasons other than death or disability, the pension plan provides that the policies or contracts in force for the employee shall vest in such employee, but only if satisfactory evidence and security is furnished the pension committee that such employee will not enter a business or accept a position in a business in competition with the company.[5]

The pension plan also provides that if an employee is terminated as a result of his dishonesty, fraud, gross neglect, or intentional damage to the property of the company, he shall forfeit all rights or interests he may have in any policy or contract and "the same shall be and become the property of the trustee to be held and disbursed by it in accordance with the terms hereof."

The provisions of the company profit-sharing plan specifically authorize the profit-sharing committee [6] to instruct the trustee to

---

[3] Under the provisions of the pension plan, a pension committee shall be appointed by the board of directors of the company. It was the duty of that committee to construe the provisions of the plan, resolve any disputes under the plan, and in general to direct the administration of the plan.

[4] Special provision is made under the pension plan for employees who retire either before or after normal retirement age which is defined by the plan to be age 65.

[5] Special provisions are made in the pension plan for employees who are reemployed. Where employment is terminated and the employee is reemployed, he is to be deemed a new employee under the plan, unless termination was for the convenience of the company in which case the pension committee can authorize immediate participation. Where an employee terminates his employment and is reemployed within 90 days of his discharge, he may be eligible for immediate participation.

[6] Under the provisions of the profit-sharing plan, a profit-sharing committee shall be appointed by the board of directors of the company and the committee is charged with responsibility for directing the investment of funds by the trustee and the general administration of the plan.

procure life insurance or annuity contracts for the accounts of participating employees of the plan. The premiums on the life insurance purchased for any employee may not exceed one-half of the aggregate value of contributions allocated to that employee. Under the plan the entire value of any life insurance contracts purchased on behalf of an employee must be converted at or before retirement to provide periodic income so that no portion of such value may be used to continue life insurance protection beyond retirement.

The profit-sharing plan provided for the payment of all of the accumulated values in a participant's account to such employee in the event of his retirement on or after normal retirement age (age 65), or in the event of total and permanent disability. In the event of death, the entire amount of the employee-participant's accumulated values in his account would be paid to his beneficiary.[7] Where employment is terminated for reasons other than retirement, total and permanent disability, or death, a percentage of the accumulated values in the participant's account would be paid under a formula contained in the profit-sharing plan.

The profit-sharing plan provides that in the event an employee, or former employee, commits an act of dishonesty, fraud, gross neglect of duty, or intentional damage to the property of the company "he shall forfeit all rights and interest which may be held to his credit in the Trust or which may later be otherwise available to him and all such values shall become the property of the Trustee" to be reallocated by the trustee as a forfeiture under the provisions of the plan.

The payment of benefits under the profit-sharing plan is conditioned upon the submission of satisfactory evidence and security to the profit-sharing committee that the employee, or former employee, will not engage in a business or accept a position in a business which is in competition with the company. Any decision regarding this covenant not to compete would be made by the profit-sharing committee, the decision of that committee being final.

The cost of the life insurance protection under the life insurance contracts provided for petitioners was as follows:

|  | 1964 | 1965 | 1966 | 1967 |
|---|---|---|---|---|
| Pension plan: | | | | |
| Funkhouser | $378.80 | $397.87 | $418 | $438 |
| Burnett | | | 207 | 225 |
| Profit-sharing plan: | | | | |
| Burnett | | | 116 | 160 |

[7] As in the case of the pension plan, special provisions for early retirement, late retirement, and termination of employment are incorporated into the provisions of the profit-sharing plan.

Respondent increased the income reported by each petitioner on his income tax returns by the amounts for the years indicated above as additional receipts from his employer.

Section 72(m)(3)[8] provides that the current cost of life insurance protection purchased under a qualified annuity, pension, or profit-sharing plan is includable in the gross income of the employee if the proceeds of life insurance contracts are payable directly or indirectly to the employee-participant or his beneficiary.

Section 1.72–16, Income Tax Regs., provides in pertinent part as follows:

Sec. 1.72–16 Life insurance contracts purchased under qualified employee plans.

(b) *Treatment of cost of life insurance protection.* (1) The rules of this paragraph are applicable to any life insurance contract—

(i) Purchased as a part of a plan described in section 403(a), or

(ii) Purchased by a trust described in section 401(a) which is exempt from tax under section 501(a) if the proceeds of such contract are payable directly or indirectly to a participant in such trust or to a beneficiary of such participant.

The proceeds of a contract described in subdivision (ii) of this subparagraph will be considered payable indirectly to a participant or beneficiary of such participant where they are payable to the trustee but under the terms of the plan the trustee is required to pay over all of such proceeds to the beneficiary.

(2) If under a plan or trust described in subparagraph (1) of this paragraph, amounts which were allowed as a deduction under section 404, or earnings of the trust, are applied toward the purchase of a life insurance contract described in subparagraph (1) of this paragraph, the cost of the life insurance protection under such contract shall be included in the gross income of the participant for the taxable year or years in which such contributions or earnings are so applied.

---

[8] SEC. 72. ANNUITIES; CERTAIN PROCEEDS OF ENDOWMENT AND LIFE INSURANCE CONTRACTS.

(m) SPECIAL RULES APPLICABLE TO EMPLOYEE ANNUITIES AND DISTRIBUTIONS UNDER EMPLOYEE PLANS.—

\*  \*  \*  \*  \*  \*  \*

(3) LIFE INSURANCE CONTRACTS.—

(A) This paragraph shall apply to any life insurance contract—

(i) purchased as a part of a plan described in section 403(a), or

(ii) purchased by a trust described in section 401(a) which is exempt from tax under section 501(a) if the proceeds of such contract are payable directly or indirectly to a participant in such trust or to a beneficiary of such participant.

(B) Any contribution to a plan described in subparagraph (A)(i) of a trust described in subparagraph (A)(ii) which is allowed as a deduction under section 404, and any income of a trust described in subparagraphs (A)(ii), which is determined in accordance with regulations prescribed by the Secretary or his delegate to have been applied to purchase the life insurance protection under a contract described in subparagraph (A), is includible in the gross income of the participant for the taxable year when so applied.

(C) In the case of the death of an individual insured under a contract described in subparagraph (A), an amount equal to the cash surrender value of the contract immediately before the death of the insured shall be treated as a payment under such plan or a distribution by such trust, and the excess of the amount payable by reason of the death of the insured over such cash surrender value shall not be includible in gross income under this section and shall be treated as provided in section 101.

(3) If the amount payable upon death at any time during the year exceeds the cash value of the insurance policy at the end of the year, the entire amount of such excess is considered current life insurance protection. The cost of such insurance will be considered to be a reasonable net premium cost, as determined by the Commissioner, for such amount of insurance for the appropriate period.

(4) The amount includible in the gross income of the employee under this paragraph shall be considered as premiums or other consideration paid or contributed by the employee only with respect to any benefits attributable to the contract (within the meaning of paragraph (a) (3) of § 1.72–2) providing the life insurance protection. However, if under the rules of this paragraph an owner-employee is required to include any amounts in his gross income, such amounts shall not in any case be treated as part of his investment in the contract.

\*        \*        \*        \*        \*        \*        \*

(6) This paragraph shall not apply if the trust has a right under any circumstances to retain any part of the proceeds of the life insurance contract. But see paragraph (c) (4) of this section relating to the taxability of the distribution of such proceeds to a beneficiary.

Section 1.72–16 (c) (4) provides:

(4) If an employee neither paid the total cost of the life insurance protection provided under a life insurance contract, nor was taxable under paragraph (b) of this section with respect thereto, no part of the proceeds of such a contract which are paid to the beneficiaries of the employee as a death benefit is excludable under section 101 (a). The entire distribution is taxable to the beneficiaries under section 402 (a) or 403 (a) except to the extent that a limited exclusion may be allowable under section 101 (b).

Petitioners contend that under subparagraph (6) of section 1.72–16 (b) of the regulations which provides that the inclusionary provisions of that section shall not apply when "the trust has a right under any circumstances to retain any part of the proceeds of the life insurance contract," the cost of the life insurance protection provided under the pension plan and profit-sharing plan is not includable in their income. Petitioners state that these plans provide for contingencies, the occurrence of which will precipitate a forfeiture of the participant's interest in the proceeds of the life insurance thereby giving the trustees under certain circumstances a right to retain "part of the proceeds of the life insurance contract." Petitioners specifically point to the 5-year covenant not to compete required for these policies to vest in the employee where employment is terminated other than by retirement, disability, or death and the forfeiture provisions in the event of discharge due to willful misconduct present in both plans. Additionally, Burnett argues that the contingent and partial vesting provisions of the profit-sharing plan present circumstances under which the trustee of the plan rather than the employee might receive the proceeds of the life insurance.

Respondent points out that the trustee under the plans herein does not have a present right as a named beneficiary to receive the proceeds

of the life insurance contracts, and concludes on this basis that the cost of current life insurance protection provided by the pension and profit-sharing plans is includable in the gross income of petitioners in the year paid. Respondent argues that the right of the trust under any circumstances to retain any part of the proceeds of the life insurance contract refers to a present right in the year in which the payment for the protection is made.

The position taken by respondent herein is the same position which he took in Rev. Rul. 69–544, 1969–2 C.B. 12, and respondent relies on that ruling as a proper interpretation of the provisions of section 1.72–16(b)(6) of the regulations.

As petitioners point out, neither party contends that section 1.72–16(b)(6) is an invalid regulation but rather each relies on his interpretation of that section. Petitioners contend that Rev. Rul. 69–544 is at variance with the plain wording of section 1.72–16(b)(6) of the regulations.

In *Raymond J. Moore*, 45 B.T.A. 1073 (1941), we held that the portion of the premiums paid by a qualified pension trust for the benefit of employees for an annuity contract for an employee was not includable in the employee's income but that the portion of the premium paid for the life insurance feature of such contract was includable in the employee's income. In the *Moore* case we explained our holding as to the portion of premiums paid for the life insurance features of the contract as follows (pp. 1078–1079) :

> With respect to the death benefit feature of the contract, we think the answer is different. If these petitioners had taken out the policies on their lives, the benefits thereunder to be paid by the insurer to their designated beneficiaries, and the pension fund had merely been used as a source of payment of the premiums, these payments when made, would constitute income to the petitioners, since they would have received the direct benefits of these payments. *N. Loring Danforth*, 18 B.T.A. 1221. Although the conditions are not quite the same here, the distinction is so slight as not to be material. It is true that the present policies were taken out by and are the property of the trustee, to whom all the payments to be made thereunder by the insurers are payable. It is likewise true that the obligation of the insurer is not to the insured but to the trustee for the benefit of the pension fund, and that anything derived in the future in the way of either a lump sum payment or an annuity by the participating employee goes technically to him from the pension fund and not the insurer. However, the provisions of the pension plan permit the insured to designate the beneficiary of the payment which will be made by the pension fund in case of his death, and to change such beneficiary. * * *

Under the scheme of the statute providing for the taxation of annuities, amounts paid by a qualified pension trust for an annuity contract for an employee do not escape taxation because of not being included in his income in the year the premium is paid since the entire

amount of the annuity paid for the employer is taxable income when received as an annuity, *Charles L. Jones*, 2 T.C. 924 (1943), whereas proceeds of life insurance contracts payable by reason of death are excluded by provisions of the revenue laws from the income of the recipient. Sec. 101(a), I.R.C. 1954, sec. 22(b)(1), I.R.C. 1939, and comparable provisions of the prior revenue laws.[9]

Following our decision in *Raymond J. Moore, supra*, respondent issued rulings and regulations requiring the inclusion of the current cost of life insurance under a life insurance contract provided for an employee by a qualified trust in the employee's income where the benefits are payable to beneficiaries designated by the employee. See sec. 39.165-6(a)(3)(i), Regs. 118, as promulgated Sept. 23, 1953.

Section 72(m)(3) was added to the Code by Pub. L. 87-792 (Oct. 10, 1962), to codify rules contained in the regulations.[10] It is clear that the inclusion of the current cost of life insurance protection in the employee's gross income in the year paid by the trustee is considered in the regulations to relate to section 101(a) which provides for the exclusion of life insurance proceeds in computing gross income of the beneficiary of the policy.

The life insurance protection for which the premium is includable in income is the amount of the face of the policy over its cash sur-

---

[9] In the event the employee lives until the cash value of the contract reaches or exceeds its face value, so that the payments received by him or his beneficiary are entirely annuity payments, the recipient of the annuity payments is entitled to exclude from his annuity income that portion of the payments attributable to the employee's contributions. The employee's contributions include amounts includable in his income as premiums on current life insurance protection. See sec. 72(f), I.R.C. 1954, and secs. 1.72–1(c)(2) and 1.72–8(a)(1), Income Tax Regs.

[10] H. Rept. No. 378, 87th Cong., 1st Sess. (1961), 1962–3 C.B. 261, 290, and S. Rept. No. 992, 87th Cong., 1st Sess. (1961), 1962–3 C.B. 303, 346, both state in this respect:

(3) *Life insurance contracts.*—Paragraph (3) of the new subsection (m) is applicable to any life insurance contract—

(i) which is purchased as part of a qualified annuity plan described in section 403(a), or

(ii) which is purchased by a qualified trust, if the proceeds of such life insurance contracts are payable directly or indirectly to a participant in such trust or to a beneficiary of such participant.

Paragraph (3)(B) provides that any contributions to such a qualified annuity plan or such a qualified trust allowed as a deduction under section 404, and any income of such a qualified trust, which are determined (in accordance with regulations prescribed by the Secretary or his delegate) to have been applied to purchase the life insurance protection under a life insurance contract to which paragraph (3) applies are includible in the gross income of the employee for whom such protection is purchased for the taxable year when such contributions, or such income, are so applied. In the case of the death of an employee insured under a life insurance contract to which paragraph (3) applies, an amount equal to the cash surrender value of such contract immediately before the death of the employee shall be treated as a payment under the qualified plan or trust, and the excess of the amount payable by reason of the death of the insured over such cash surrender value shall not be includible in gross income under section 72 and shall be treated as provided in section 101. The provisions of paragraph (3) are rules presently contained in the regulations under the Internal Revenue Code of 1954.

render value. Sec. 72(m)(3)(C). As we pointed out in *A. Rolph Evans*, 56 T.C. 1142, 1151 (1971):

The life insurance protection provided by the contracts is equal to the excess of the face amount over the cash surrender value of the contracts. As the cash surrender value of the contracts increases with the payment of each premium, the amount of insurance protection decreases. Thus, the insurance protection provided by the contracts is a form of decreasing term insurance. See *Jeffrey* v. *United States*, an unreported case (D.N.J., 11 A.F.T.R. 2d 1401, 1402, 63–1 U.S.T.C. par. 9475). When the cash surrender value of the contracts equals or exceeds the face amount, the life insurance protection provided by the contracts ceases.

In our view when the provisions of section 1.72–16(b)(6) of the Income Tax Regulations are read in context and in the light of the statutory provisions and prior decisions, it is proper to interpret these regulations to exclude from income the life insurance premiums paid on behalf of the employee only where the trust has a right "under any circumstances" to retain any part of the excess of the amount of the insurance policy over its cash surrender value. In our view in the present case, all the trustees could retain under any circumstances was the cash surrender value of the policy. This is clear in the profit-sharing plan which provides that the employee shall forfeit "all rights and interest held to his credit in the trust" and it is clear from the provisions of the pension plan that in no event shall death benefits be payable to the company but if no beneficiary is designated shall be payable to the employee's estate.

If section 1.72–16(b)(6), Income Tax Regs., were interpreted as petitioners argue it should be, it would be contrary to the scheme of the statute which is to exclude from an employee's taxable income payment by a qualified trust to procure for the employee an annuity which at a later date will be included in his taxable income or that of another recipient but to include in an employee's taxable income premium payments for insurance, the proceeds of which will not be included in the beneficiary's income because of the provisions of section 101(a). If section 1.72–16(b)(6) is interpreted to apply only where the trustee has a right to proceeds of the insurance portion of the contract, which is the excess of the face amount over its cash surrender value, it is consistent with the scheme of the statute. Since the regulation can be interpreted not to be inconsistent with the statute, it should be so interpreted. *Commissioner* v. *South Texas Co.*, 333 U.S. 496, 499 (1948).

We conclude under the facts in this case that the current cost of life insurance protection provided under both the pension and profit-sharing plans is includable in petitioners' gross income for the taxable years in issue.

*Decisions will be entered for respondent.*